NOBLOM (U. S. v.). See Case No. 15,896.

## Case No. 10,284.

### NOE v. PRENTICE et al.

[3 Betts, C. C. MS. 56.]

Circuit Court, S. D. New York. May 25, 1844.

PATENTS FOR INVENTIONS — INFRINGEMENT — INJUNCTION—ABANDONMENT.

[1. Letters patent No. 3,188 were issued July 20, 1843, to Charles L. Noe, for an alleged discovery in making hats or caps of horsehair braid, "by sewing the edges of the braid together with horsehair." The only novelty in the invention was the use of horsehair in sewing, instead of cotton or silk thread, theretofore used. *Held* that, in a suit for infringing this patent, an injunction would not be granted in the first instance, especially as the patent had been very recently taken out, and never quietly enjoyed by the plaintiff.]

[2. 9 Laws Bior. & D. 1019, 1020, § 7 (5 Stat. 354), provides that every purchaser of a newly-invented device prior to the application of the inventor for a patent shall have the right to use and vend the specific device without liability to the inventor, "and no patent shall be held to be invalid for reason of such purchase * * * except on proof of abandonment of such invention to the public; or that such purchase * * * has been for more than two years prior to such application for a patent." *Held*, that this act applies to purchases from persons other than the inventor, and does not affect existing decisions as to what acts done by the inventor will bar his right to a patent.]

[This was a bill in equity by Charles L. Noe against John H. Prentice and Archibald T. Finn for infringement of a patent. Heard on motion for injunction.]

BETTS, District Judge. This is an application for an injunction, founded upon a patent granted July 20, 1843, on an application filed November 18, 1842. There is some confusion in the proofs as to the time the first application to the patent office was really made, or how far it comported in substance and principle with that on which the patent was founded. Assuming it to be proved that the application was within two years after the plaintiff's discovery, various objections to the allowance of an injunction are raised by the answers of the defendants, only two of which will now be particularly noticed: First, that the patent cannot be maintained, if the discovery be useful, because it is not original and new with the plaintiff. Second, that, if he be the first and original discoverer, he has lost the right of appropriating it by patent, by having previously dedicated its use to the public.

The plaintiff's specific claim is for his discovery in making hats or caps of horsehair braid "by sewing the edges of the braid together with horsehair," and, if maintained, it must be upon the ground that using horsehair to sew with in place of thread, cotton, silk, or any other of the materials before known and used for the purpose, is a patentable discovery.

It has long been considered an elementary doctrine in respect to patent rights, that some new manufactured thing, or a new method or process of manufacture, must be discovered, or mechanical skill and ingenuity be employed in producing a new result, to lay the foundation for a patent, and that the mere substitution of one method for another in making a known article is insufficient to support one. Godson, 68; Philip, 102, 104, 106; Barn. & Ald. 560; Woodcock v. Parker [Case No. 17,971]. A series of instances referred to in the notes of a recent English work would seem to raise a doubt whether this distinction is now adhered to, on the decision of patent causes in England. Webster, Law & Practice of Letters Patent, 11, 47, and notes. The question may perhaps be open for consideration on a trial at law, or on hearing in equity upon the merits, but I should not regard these new suggestions as sufficient authority to authorize an injunction in behalf of a patent so recently taken out as the present one, and never quietly enjoyed by the plaintiff. Horsehair braid, it is proved, was a known material, and the evidence would tend to show that it had been used for making caps and hats, by sewing the edges of the braid together, before the plaintiff's discovery. If not, his patent does not secure that manufacture. It is to be construed as if everything in relation to the process was well known, other than his method of taking the hair itself, in its natural or prepared state (the patent does not define which), and using that as the sewing material. This new use of a well-known ma-

terial, in a process also well known, though before effected by a different material, will not, in my opinion, justify awarding an injunction, in the first instance, to protect the discovery. Godson, 185, 186.

The second objection is one of wider interest, and involving the construction of a recent and important act of congress in respect to patented inventions. The rule declared by the solemn adjudications of our courts has been understood to be that if an inventor make sale of the article discovered, before the grant of a patent, the patent will be thereby rendered void. Mellus v. Silsbee [Case No. 9,404]; [Pennock v. Dialogue] 2 Pet. [27 U. S.] 1. So his acquiescence in the known public use of his invention, prior to his patent, will be an abandonment of his right as first discoverer. [Shaw v. Cooper] 7 Pet. [32 U. S.] 292. In this case the proofs are clear that the plaintiff, a considerable period prior to his application for a patent, placed his manufactured article, with others, for sale at different and public places. This was, however, within two years of the time he presented his application to the patent office, and the question is whether the act of congress of 1839 protects the right of the patentee, notwithstanding such public sale, and which, as the law previously stood, would have been an abandonment of his right. [McClurg v. Kingsland] 1 How. [42 U. S.] 202. The act relied upon enacts, "That every person or corporation who has or shall have, purchased or constructed any newly invented machine, manufacture, or composition of matter, prior to the application of the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, manufacture or composition of matter so made or purchased, without liability therefor to the inventor, or any other person interested in such invention; and no patent shall be held to be invalid by reason of such purchase, sale or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public; or that such purchase, sale or prior use, has been for more than two years prior to such application for a patent." 9 Laws [Bior. & D.] 1019, 1020, § 7 [5 Stat. 354].

The defendants contend that a public sale of the article invented, by the inventor, is that abandonment referred to by congress in this section, and which the act intended to leave to its effect and consequences, as the law had before stood. The plaintiff insists that he is protected by the statute, notwithstanding the sale of his invention, if not made more than two years previous to his application for a patent. I am disinclined, on this summary motion, to assert a definite opinion as to the construction of this enactment, and think it advisable to leave that question open for farther consideration on a trial at law, on the first hearing of this cause. But I am constrained to say that my impression is strong that congress do not, by the provision, intend to protect sales made by the discoverer or inventor himself. The first branch of the enacting clause is manifestly designed for the benefit and protection of the purchaser, not of the inventor. If the purchase is made of the inventor, no statute would be necessary to protect the purchaser against his action or claim by means of a patent or otherwise, whether the vendor retained in his own use, or again sold to others, the subject of his purchase. But it would be otherwise in respect to purchases made of third persons without the license or assent of the discoverer or future patentee. The language of the act applies fitly to such a case only, and I am not aware of any exigency in its terms or spirit demanding a construction more comprehensive. The exception in the section is framed for the benefit of the patentee, and that goes no farther than to secure his rights notwithstanding such sales between third parties, if they have not continued over two years, or unless he is proved to have abandoned his right. Congress does not define what facts shall constitute an abandonment; it undoubtedly declares, by implication, that acquiescing in sales by others for less than two years shall not be regarded an abandonment by the patentee, but leaves, according to my impression, his own acts and assent to have against him every operation and consequence given them by the then existing law. The case of McClurg v. Kingsland, in the supreme court, I think, assumes this interpretation of the statute. 1 How. [42 U. S.] 202. The specific question was on the first clause, and whether the evidence in the case did not protect the immediate defendants in the use of the plaintiff's discovery. But the court very significantly intimate that the license of the plaintiff to the defendants to use his discovery prior to his patent rendered his patent void.

Without placing my decision upon this point of the case, for reasons already sufficiently declared, I should deny the injunction prayed for. The plaintiff, in a case so circumstanced as this, ought to be required to establish his right at law before receiving the extraordinary aid of an injunction. It has not been the usual practice in this court to order issues at law, although it may probably be competent to the court to do so. Godson, 187. We rather leave it as a condition for the plaintiff that he proceed to a final hearing on his bill and the answer and proofs, or bring his suit at law within a reasonable time, or that his bill be dismissed, with costs. No order in relation to costs is made in this stage of the case, but the order is that the plaintiff bring his action at law to establish the validity of his patent, or have a final hearing upon the merits of the cause at the next term of the court; otherwise the defendants be then at liberty to move the dismissal of the bill.